IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KIMBERLY RAMIREZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-12-1922 |
| | § | |
| 24 HOUR FITNESS USA, INC. and | § | |
| 24 HOUR FITNESS, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Defendant 24 Hour Fitness USA, Inc. ("Fitness USA")[1] removed this action from the 125th Judicial District Court for Harris County, Texas. Jurisdiction is based on diversity under 28 U.S.C. § 1332. Pending before the court is Fitness USA's Motion for Summary Judgment (Docket Entry No. 9). For the reasons explained below the court will grant the motion.

---

[1] Although Plaintiff Kimberly Ramirez names two parties as defendants, "24 Hour Fitness" is a non-existent entity. See Fitness USA's Motion for Summary Judgment, Docket Entry No. 9, p.1, n.1. Ramirez does not argue to the contrary. Fitness USA has acknowledged that it is a proper party to the action. All claims against "24 Hour Fitness," along with those against "24 Hour Fitness USA, Inc.," will be dismissed in a separate final judgment.

## I. Background

### A. Ramirez's Allegations

In June of 2010 Ramirez entered a Fitness USA facility in Baytown, Texas, to attend a yoga class.[2] Ramirez alleges that as she walked through the Fitness USA facility she "slipped in a puddle of water and/or sweat," suffering injuries as a result of the fall.[3] In her Original Petition Ramirez asserts two negligence causes of action against Fitness USA to recover for her injuries and ensuing medical expenses.[4] Ramirez alleges that Fitness USA "failed to use that degree of care which an owner or occupier of ordinary prudence would have used under the same or similar circumstances."[5] Ramirez contends that such negligence was the proximate cause of her injuries.[6] In the alternative Ramirez alleges that Fitness USA "negligently engaged in a contemporaneous activity that proximately caused the occurrence in question."[7]

---

[2] Plaintiff Kimberly Ramirez's Original Petition ("Original Petition"), Ex. 1 to Notice of Removal, Docket Entry No. 1-2, ¶ 9; Fitness USA's Motion for Summary Judgment, Docket Entry No. 9, p. 2.

[3] Original Petition, Ex. 1 to Notice of Removal, Docket Entry No. 1-2, ¶ 9.

[4] Id. ¶ 19.

[5] Id. ¶ 14.

[6] Id. ¶ 15.

[7] Id. ¶ 17.

**B.    Undisputed Facts**

Ramirez became a member at the Fitness USA facility in Baytown on December 16, 2007, when she executed a Club Membership Agreement ("CMA").[8] The following language is enclosed within a black bar on the bottom of the first page of the CMA: **"RELEASE OF LIABILITY • ASSUMPTION OF RISK • BUYER'S RIGHT TO CANCEL."**[9] This text is larger than the other text of the first page -- including the text that appears below it -- and equal in size and prominence to the text of the other headings.  The following statement appears below the heading:

> Using the 24 Hour Fitness USA, Inc. (24 Hour) facilities involves the risk of injury to you or your guest, whether you or someone else causes it.  Specific risks vary from one activity to another and the risks range from minor injuries to major injuries, such as catastrophic injuries including death.  **In consideration of your participation in the activities offered by 24 Hour, <u>you understand and voluntarily accept this risk and agree that 24 Hour . . . will not be liable for any injury</u>, including, without limitation, personal, bodily, or mental injury, economic loss or any damage to you . . . resulting from the negligence of 24 Hour or anyone on 24 Hour's behalf or anyone using the facilities <u>whether related to exercise or not</u>.**[10]

---

[8]Club Membership Agreement ("CMA"), Ex. B to Fitness USA's Motion for Summary Judgment, Docket Entry No. 9-2; Plaintiff Kimberly Ramirez's Response to 24 Hour Fitness USA, Inc.'s Motion for Summary Judgment ("Ramirez's Response"), Docket Entry No. 13, p. 8.

[9]CMA, Ex. B to Fitness USA's Motion for Summary Judgment, Docket Entry No. 9-2.

[10]CMA, Ex. B to Fitness USA's Motion for Summary Judgment, (continued...)

Ramirez read, understood, and signed the CMA immediately under the above-quoted release of liability clause.[11]

## C.   Motion for Summary Judgment

Fitness USA moved for summary judgment, arguing that it is entitled to judgment as a matter of law because the release of liability clause encompasses the claims asserted in the Original Petition.[12]  Fitness USA argues that the release satisfies the Texas fair notice requirements and is therefore enforceable.[13]  Disputing this characterization, Ramirez contends that the release is "ambiguous," "misleading," and "inconspicuous."[14]  Ramirez also contends that, even if the release complies with the fair notice requirements, the release is unconscionable or constitutes an invalid contract of adhesion.[15]  Ramirez further argues that the

---

[10](...continued)
Docket Entry No. 9-2.  Ramirez refers to this portion of text as the "CMA."  Ramirez's Response, Docket Entry No. 13, p. 8.  To avoid confusion the court will refer to the entire membership agreement as the "CMA," and to this portion of text within the CMA as the "release of liability clause" or the "release."

[11]Oral and Videotaped Deposition of Kimberly Ramirez ("Ramirez Deposition"), Ex. C to Fitness USA's Motion for Summary Judgment, Docket Entry No. 9-3, pp. 47:4-48:8; Ramirez's Response, Docket Entry No. 13, p. 8.

[12]Fitness USA's Motion for Summary Judgment, Docket Entry No. 9, p. 5.

[13]Id. at 5-7.

[14]Ramirez's Response, Docket Entry No. 13, pp. 15-21.

[15]Id. 21-23.

release is unenforceable because Fitness USA retained the right to unilaterally modify the agreement.[16]

## II. Applicable Law

### A. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure mandates summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment "bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." Lincoln Gen. Ins. Co. v. Reyna, 401 F.3d 347, 349 (5th Cir. 2005). Where the plaintiff bears the burden of proof at trial, a defendant moving for summary judgment may satisfy its burden by "'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the [plaintiff]'s case." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2554 (1986). Where a defendant moves for summary judgment based on an affirmative defense, however, the defendant "'must establish each element of that defense as a matter of law.'" Shanks v. AlliedSignal, Inc., 169 F.3d 988, 992 (5th Cir. 1999) (quoting Crescent Towing & Salvage Co., Inc. v. M/V Anax, 40 F.3d 741, 744 (5th Cir. 1994)). Once the movant has carried this burden, the nonmovant must show that specific facts exist over

---

[16] Id. at 15.

which there is a genuine issue for trial. Reyna, 401 F.3d at 349 (citing Celotex, 106 S. Ct. at 2553-54). The nonmovant may not rest upon mere allegations in the pleadings to make such a showing. Reyna, 401 F.3d at 350. To create a genuine fact issue, more than some "metaphysical doubt as to the material facts" is required. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).

The parties may support the existence or nonexistence of a genuine fact issue by either (1) citing to particular parts of the record, including depositions, documents, electronically stored information, affidavits or declarations, admissions, and interrogatory answers, or (2) showing that the materials cited do not establish the absence or presence of a genuine dispute or that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A)-(B). In reviewing this evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2110 (2000).

B.  **Releases of Liability**

Under Texas law a release of liability "operates to extinguish the claim or cause of action as effectively as would a prior judgment between the parties and is an absolute bar to any right of action on the released matter." Dresser Indus., Inc. v. Page

Petroleum, Inc., 853 S.W.2d 505, 508 (Tex. 1993). The Supreme Court of Texas has defined a release as a contract in which "'one party assumes the liability inherent in a situation'" and "'agrees to hold the other without responsibility for damage or other liability arising out of the transaction involved.'" Id. (quoting Black's Law Dictionary 658 (5th ed. 1979)). Release of liability is an affirmative defense. Dresser, 853 S.W.2d at 508.

To be enforceable under Texas law a release must comply with two fair notice requirements: the express negligence doctrine and the conspicuousness requirement. Id. at 509. The express negligence doctrine requires that the intent of the parties "be specifically stated in the four corners of the contract." Storage & Processors, Inc. v. Reyes, 134 S.W.3d 190, 192 (Tex. 2004) (internal quotation marks omitted). To satisfy the conspicuousness requirement "something must appear on the face of the contract to attract the attention of a reasonable person when he looks at it. Language may satisfy the conspicuousness requirement by appearing in larger type, contrasting colors, or otherwise calling attention to itself." Id. (internal quotation marks and marks of alteration omitted). Whether the release satisfies the fair notice requirements is a question of law for the court. Dresser Indus., 853 S.W.2d at 509.

C.  **Unconscionability and Contracts of Adhesion**

Under Texas law a contractual release is unenforceable if "the clause involved is so one-sided that it is unconscionable under the

circumstances existing when the parties made the contract." In re Poly-America, L.P., 262 S.W.3d 337, 348 (Tex. 2008) (internal quotation marks omitted). The doctrine of unconscionability is aimed at preventing "oppression and unfair surprise." Id. Whether a contract is unconscionable is a question of law, and the party asserting unconscionability bears the burden. Id.

In addressing a claim of unconscionability the court considers both the procedural and substantive aspects of the agreement. Pony Express Courier Corp. v. Morris, 921 S.W.2d 817, 821 (Tex. App.—San Antonio 1996, no writ.). Procedural unconscionability concerns the facts surrounding the bargaining process -- i.e., how the parties arrived at the terms in question. Id. "[T]he circumstances surrounding the negotiations must be shocking." Ski River Dev., Inc. v. McCalla, 167 S.W.3d 121, 136 (Tex. App.—Waco 2005, no pet.). Substantive unconscionability focuses on the fairness of the agreement itself and whether there existed legitimate commercial reasons to include the terms in question. Pony Express, 921 S.W.2d at 821. A party asserting unconscionability of a contract must prove both procedural and substantive unconscionability. Ski River, 167 S.W.3d at 136.

A contract of adhesion is "a standardized contract form for consumer goods and services that are offered on a 'take it or leave it' basis without affording the consumer a realistic opportunity to bargain and under such conditions that consumer cannot obtain the

desired product or services except by acquiescing." <u>Dillee v. Sisters of Charity of the Incarnate Word Health Care Sys.</u>, 912 S.W.2d 307, 309 n.4 (Tex. App.—Houston [14th Dist.] 1995, no writ.) (<u>citing</u> <u>Black's Law Dictionary</u> 38 (5th ed. 1979)). Contracts of adhesion "are not automatically unconscionable." <u>In re U.S. Home Corp.</u>, 236 S.W.3d 761, 764 (Tex. 2007). A disparity in bargaining power may render an agreement unconscionable "when one party has no real choice in accepting the terms of the agreement." <u>Dillee</u>, 912 S.W.2d at 309. No such unconscionability exists, however, "where a claimant has freedom of choice in entering into the agreement." <u>Id.</u>; <u>see also</u> <u>Allright, Inc. v. Elledge</u>, 515 S.W.2d 266, 267-68 (Tex. 1974) ("If the written agreement is signed . . . and if there is no circumstance that would deprive him of a freedom of choice . . . we see no satisfactory cause for avoiding the terms of the contract.").

### III. <u>Analysis</u>

Fitness USA must establish that the release of liability clause is enforceable as a matter of law. <u>See</u> <u>Shanks</u>, 169 F.3d at 992. Fitness USA must also show that there is an absence of evidence to support Ramirez's assertion that the release is unconscionable. <u>See</u> <u>Celotex</u>, 106 S. Ct. at 2554.

### A.  Fair Notice Requirements

To establish that the release of liability clause is enforceable Fitness USA must show that the release of liability clause satisfies the two fair notice requirements.  Fitness USA argues that the release complies with the first requirement -- the express negligence doctrine -- because "[t]he release expressly lists 'negligence' as a claim being relinquished by Ramirez."[17] Seizing on the language providing that use of the Fitness USA facilities "involves the risk of injury to you or your guest, whether you or someone else causes it," Ramirez disputes the satisfaction of this doctrine.[18]  Ramirez argues that the term "someone else" is "ambiguous and misleading" because that term does not explicitly include Fitness USA.[19]  Ramirez therefore argues that the contract does not expressly release Fitness USA from liability for injuries caused by Fitness USA.[20]  Ramirez stated in an affidavit that this was her understanding when she signed the CMA.

The release explicitly bars actions for injuries "resulting from the negligence of [Fitness USA] or anyone on [Fitness USA]'s behalf or anyone using the facilities whether related to exercise

---

[17]Fitness USA's Motion for Summary Judgment, Docket Entry No. 9, p. 6.

[18]Ramirez's Response, Docket Entry No. 13, p. 16.

[19]Id.

[20]Id.

or not."[21]  Ramirez's claims, which arise out of alleged injuries resulting from the negligence of Fitness USA, are therefore expressly barred. The fact that Ramirez may have had a different interpretation of the release is immaterial. See In re Delmar "Bo" McKinney, 167 S.W.3d 833, 835 (Tex. 2005) ("Absent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract he signed, regardless of whether he read it or that it had different terms."). The court concludes that the intent of the parties to bar actions such as those brought by Ramirez is "specifically stated in the four corners of the contract." See Reyes, 134 S.W.3d at 192. Fitness USA has thus met its burden to show that the express negligence doctrine is satisfied as a matter of law.

Fitness USA argues that the release is "conspicuous" under Texas law for the following reasons:

(1) the provision is on the front page of the [CMA];
(2) the heading ("**RELEASE OF LIABILITY**") is clear and unambiguous, and it is formatted in bold, capitalized typeface larger than the text around it;
(3) the heading is also positioned in a box with a contrasting background which serves to highlight the heading;
(4) the release of liability clause is located immediately above where Ramirez signed the [CMA]; and

---

[21]CMA, Ex. B to Fitness USA's Motion for Summary Judgment, Docket Entry No. 9-2 (bolding and underlining omitted).

>   (5) pertinent portions of the release are formatted to be bold, underlined, or bold and underlined.[22]

Ramirez contends that the font size of the release is too small to be conspicuous.[23] Ramirez asserts that the release is written in 8-point font and 9-point font, below a minimum standard found in TEX. BUS. & COMM. CODE § 601.052.[24] Ramirez also argues that Fitness USA "de-emphasized" the most important terms of the release, a "tactic [that] renders the express 'negligence' language inconspicuous."[25]

Several aspects of the release of liability clause contribute to its conspicuousness. The heading appears in capital letters in a box with a contrasting background, and is written in plain language ("**RELEASE OF LIABILITY**"). The language of the release itself is in a font size no smaller than that of the other substantive provisions on the page. Ramirez's contention that the release appears in 8-point font and 9-point font is not supported by any competent summary judgment evidence. Regardless of the specific point value, however, the release is of sufficient size to satisfy the conspicuousness requirement. The 10-point minimum standard provided in TEX. BUS. & COMM. CODE § 601.052 governs notices

---

[22] Fitness USA's Motion for Summary Judgment, Docket Entry No. 9, p. 7.

[23] Ramirez's Response, Docket Entry No. 13, pp. 17-20.

[24] Id. at 19.

[25] Id. at 20.

of a consumer's right to cancel a consumer transaction, not releases of liability, and therefore does not control this case. The most important terms of the release are bolded, underlined, or both. The fact that the phrase "the negligence of [Fitness USA]" is bolded but not underlined does not de-emphasize that language as Ramirez contends. Furthermore, Ramirez cites no authority providing that the phrase must be bolded *and* underlined for the release to be enforceable. In sum, the court concludes that the release is sufficiently conspicuous so as to "attract the attention of a reasonable person when he looks at it." See Reyes, 134 S.W.3d at 192. Fitness USA has therefore sustained its burden to establish that both fair notice requirements are satisfied as a matter of law.

### B. Unconscionability and Adhesion

Ramirez, as the party asserting unconscionability, bears the burden of proof on this issue. See Poly-America, 262 S.W.3d at 348. To prove unconscionability at trial Ramirez would be required to show both procedural and substantive unconscionability. See Ski River, 167 S.W.3d at 136. At the summary judgment stage Fitness USA, as the moving party, bears the burden of pointing out that there is an absence of evidence to support unconscionability. See Celotex, 106 S. Ct. 2554.

Ramirez argues that the agreement is procedurally unconscionable because the negotiation process "pit[ted] un-

educated Ramirez against a corporation."[26] Fitness USA responds that "an imbalance in the relative sophistication of the parties is insufficient on its own to render an agreement unconscionable."[27] The court agrees. Nothing about the process by which the parties entered into the agreement is "shocking." See Ski River, 167 S.W.3d at 136. The mere fact that Ramirez did not graduate from high school does not render the agreement unconscionable. Ramirez admits that she read and understood the agreement.[28] Moreover, the non-negotiable nature of the release does not in itself show unconscionability. While the CMA may be a contract of adhesion, there is no indication that Ramirez was deprived of the freedom of choice in deciding whether to enter into the contract. See Dillee, 912 S.W.2d at 309. The limited workout options available to Ramirez[29] did not create a situation in which Ramirez was confronted with "no real choice in accepting the terms of the agreement." See id. Ramirez offers no further evidence in support of procedural unconscionability.

---

[26]Id.

[27]Defendant 24 Hour Fitness USA, Inc.'s Reply in Support of Its Motion for Summary Judgment ("Fitness USA's Reply"), Docket Entry No. 14, p. 9.

[28]Ramirez Deposition, Ex. C to Fitness USA's Motion for Summary Judgment, Docket Entry No. 9-3, p. 48:1-4.

[29]Id. at 22 ("Finally, it should be remembered that Ramirez lives out in Baytown and her workout options were limited. She should not have to give away her rights to have a decent place to workout.").

As to substantive unconscionability Ramirez contends that "there surely is a public policy in favor of seeing to it that folks have reasonable access to a safe and clean facility and to retain the right to hold the facility accountable for failing to provide . . . a safe and clean workout facility."[30] But a release of liability for negligence does not make the contract so grossly one-sided as to be unconscionable, and Ramirez cites no authority otherwise. There is no "oppression or unfair surprise" to be prevented in this case. Fitness USA has therefore satisfied its burden to show the absence of evidence supporting Ramirez's assertion of unconscionability. The court concludes as a matter of law that the release is not unconscionable.[31]

## IV.  Conclusion and Order

Fitness USA has shown as a matter of law that the release of liability clause contained in the CMA is enforceable under the fair

---

[30]Ramirez Response, Docket Entry No. 13, p. 22.

[31]The court also rejects Ramirez's argument that the release is unenforceable because Fitness USA retained the right to unilaterally modify the agreement. Ramirez's Response, Docket Entry No. 13, p. 15. Ramirez's reliance on Carey v. 24 Hour Fitness USA, Inc., 669 F.3d 202 (5th Cir. 2012), is misplaced. Carey involved the effectiveness of an arbitration provision that reserved an employer's right to unilaterally modify the arbitration provision itself. Id. at 206. The court declines to extend this arbitration-specific holding to the release at issue here. Moreover, Fitness USA has not reserved the right to modify the CMA generally or the release specifically, but only the right to modify its "policies and any club rule." CMA, Ex. B to Fitness USA's Motion for Summary Judgment, Docket Entry No. 9-2.

notice requirements and is not unconscionable.  The court therefore concludes that Fitness USA has satisfied its burden to show that there is no genuine dispute as to any material fact in this case. Accordingly Fitness USA's Motion for Summary Judgment (Docket Entry No. 9) is **GRANTED**.

**SIGNED** at Houston, Texas, on this 16th day of May, 2013.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE